## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATASHA JAMILAH GARRY, | : | CIVIL NO.: 1:20-CV-01705 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.      Introduction.

Natasha Garry ("Garry") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.      Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 15-1 to 15-10.*[2]  On October 31, 2017, Garry protectively filed[3] a Title II application for a period of disability and disability insurance benefits, alleging disability beginning November 19, 2015. *Admin. Tr.* at 12.  Garry's claim was denied on March 6, 2018, resulting in a request for a hearing on April 19, 2018. *Id.*  On March 6, 2019, Garry testified with the assistance of counsel at a hearing. *Id.*

On June 17, 2019, Administrative Law Judge Frank Barletta ("ALJ") determined that Garry had not been disabled within the meaning of the Social Security Act from November 19, 2015, through the date of the decision. *Id.* at 21. And so, he denied her benefits. *Id.*  Garry appealed the ALJ's decision to the Appeals Council, which denied her request for review on July 31, 2020. *Id.* at 1.

---

[2]  Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Garry's claims.

[3]  "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On September 21, 2020, Garry began this action by filing a complaint claiming that the Commissioner's decision is not based on substantial evidence. *Doc. 1*. Garry requests that the court reverse and set aside the Commissioner's final decision or, in the alternative, remand this case for further proceedings. *Doc. 1* at 1. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 14-15*. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 13*. The parties have filed briefs, *see docs. 18*, *22*, *28*, and this matter is ripe for decision.

### III.    Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Garry is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an

individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The

6

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.   The ALJ's Decision Denying Garry's Claim.

On June 17, 2019, the ALJ denied Garry's claim for benefits. *Admin. Tr.* at 21.  At step one of the sequential-evaluation process, the ALJ found that Garry had not engaged in substantial gainful activity since November 19, 2015, the alleged onset date. *Id*. at 14.  At step two of the sequential-evaluation process, the ALJ found that Garry had the following severe impairments: osteoarthritis of the right hip, status post total replacement, osteoarthritis of the bilateral knees, meniscal tear of the right knee, bilateral carpal tunnel syndrome, and obesity. *Id*. at 15.  At step three of the sequential-evaluation process, the ALJ found that Garry did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ then determined that Garry has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a).[4] *Id*. at 16.  Specifically, the ALJ found that

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount

Garry is "limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds." *Id*. Additionally, the ALJ found that Garry "should avoid concentrated exposure to vibrations." *Id*.  In making this RFC assessment, the ALJ noted that he considered all of Garry's symptoms that could be accepted as consistent with the record evidence and medical opinions. *Id*.

The ALJ then determined that Garry is unable to perform any past relevant work as a bus driver. *Id*. at 19.  The ALJ, however, found that considering Garry's age, education, work experience, and RFC, there exist jobs in significant numbers in the national economy that she can perform, such as an addresser and a charge account clerk. *Id*. at 20.  In sum, the ALJ concluded that Garry was not disabled from November 19, 2015, through the date of his decision on November June 17, 2019. *Id* at 21.  Thus, the ALJ denied Garry SSI benefits. *Id*.

## V.    Discussion.

Garry argues that the ALJ's RFC assessment is not based on substantial evidence because the ALJ failed to include any limitations relating to Garry's carpal tunnel syndrome. *Doc. 18* at 5.  Garry also contends that the ALJ failed to

---

of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

provide any reason for rejecting Dr. Stone's opinion that Garry is limited to occasional reaching. *Id.*  Additionally, Garry argues that the ALJ's decision is constitutionally defective because "the appointment of Andrew Saul as a single Commissioner of the Social Security Administration who is removable only for cause and serves a longer term than that of the President violates separation of powers." *Id.*  Because we find that the ALJ committed errors that are grounds for remand, we will not address Garry's constitutional claims. *See Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.  This rule has found most varied application.  Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

Because some of Garry's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Garry's, filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in

the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of

factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations

11

provide that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations

provide that "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2).

        The ALJ must explain how he or she considered the "supportability" and

"consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her

consideration of the other factors. *Id*.  But if there are two equally persuasive

medical opinions about the same issue that are not exactly the same, then the ALJ

must explain how he or she considered the other factors. 20 C.F.R.

§§ 404.1520c(b)(3), 416.920c(b)(3).

**A. The ALJ failed to include any limitations in his RFC regarding Garry's severe impairment of carpal tunnel syndrome.**

In his decision, the ALJ lists Garry's carpal tunnel syndrome as a severe limitation. *Admin. Tr.* at 15.  But in the ALJ's discussion of Garry's RFC, where he found that Garry was limited to sedentary work, the ALJ does not include any limitations related to Garry's severe impairment of carpal tunnel syndrome. Instead, the ALJ merely recites record evidence related to Garry's carpal tunnel syndrome; however, he fails to conduct any function-by-function analysis of Garry's carpal tunnel syndrome as required by SSR 96-8P.[5]  As a result, the ALJ failed to adequately explain his determination of Garry's ability to reach/handle as it relates to her RFC or explain why such a limitation is excluded.

While an impairment that is found to be severe at step two does not necessitate a finding that it erodes the claimant's RFC at step five, "[a]n explanation should be provided when … an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation." *Thomas v. Colvin*, No. 1:14-cv-274, 2015 WL 4067147, at *8 (W.D. Pa. July 2,

---

[5] The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. SSR 96-8P(4).

2015) (quoting *Spears v. Colvin*, 2013 WL 5350916, at \*4 (E.D. Okla. Sept. 25, 2013)).  Indeed, there is a basis for remand when an ALJ determines that an impairment is severe but fails to include any limitation or provision relating to the severe impairment in the RFC assessment. *See Reeves v. Berryhill*, No. 3:16-cv-2510, 2017 WL 3433706, at \*13 (M.D. Pa. Aug. 10, 2017) (finding that the ALJ's failure to include provisions or limitations regarding the claimant's severe limitation of migraines in the RFC assessment was grounds for remand); *see also Barbour v. Kijakazi*, No. 4:20-cv-0861, 2021 WL 4478332, at \*5 (M.D. Pa. Sept. 30, 2021) ("I find that, considering the record in this case, the inadequacies in the ALJ's function-by-function assessment, and evaluation of the medical opinion evidence, frustrate meaningful judicial review.").

Here, although the ALJ's failure to conduct a function-by-function analysis of Garry's carpal tunnel syndrome is grounds for remand, it is not the only cognizable error in the ALJ's decision.  Accordingly, for the sake of completeness, we will discuss Garry's second argument that the ALJ failed to provide any reason for rejecting Dr. Stone's opinion that Garry is limited to occasional reaching.

### B.  The ALJ failed to explain why he rejected the portion of Dr. Stone's opinion related to reaching limitations.

By way of background, consultative medical examiner, Marielle Stone, M.D. ("Dr. Stone"), physically examined Garry on February 12, 2018. *Admin Tr.*

14

at 466.  Dr. Stone noted that Garry had been diagnosed with carpal tunnel
syndrome and opined that she would be limited to occasional reaching on the right
and frequent reaching on the left. *Id*. at 466, 473.  In his evaluation of Dr. Stone's
opinion, the ALJ noted that "Dr. Stone opined that the claimant is limited to
occasional reaching, but could continuously handle, finger, and feel with the
bilateral upper extremities." *Id*. at 19 (citing *Admin. Tr.* at 464-480).  The ALJ then
noted that he found Dr. Stone's opinion unpersuasive "as the opinion is based on a
brief and isolated encounter with the claimant in February 2018." *Id*. at 19.
Additionally, the ALJ found that Dr. Stone's opinion regarding Garry's walking
and standing limitations were inconsistent with the medical record; however, the
ALJ provided no reason as to why he rejected Dr. Stone's opinion that Garry is
limited to occasional reaching on the right hand and frequent reaching on the left.
*Id*.

As the new regulations provide, the ALJ must explain how he or she
considered the "supportability" and "consistency" of a medical source's opinion.
20 C.F.R. §§ 404.1520c(b)(2).  Although the ALJ noted Dr. Stone's opinion
regarding Garry's reaching limitations, he failed to explain why he rejected that
opinion.  Indeed, the Commissioner concedes this point in her brief. *See doc.* 22 at
31.  Without any explanation as to why the ALJ rejected Dr. Stone's opinion
regarding Garry's reaching limitations, we cannot conclude that the he adequately

explained how he considered the supportability and consistency of Dr. Stone's opinion.  Thus, the ALJ erred in failing to provide a reason as to why he rejected Dr. Stone's opinion related to Garry's reaching limitations.  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see also Cotter*, 642 F.2d at 705 ("In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

Accordingly, we find that the ALJ's failure to do so frustrates meaningful judicial review and is grounds for remand. *See Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

## VI.    Conclusion.

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence

16

four of 42 U.S.C. § 405(g).  An appropriate order follows.

<u>**_S/Susan E. Schwab_**</u>
Susan E. Schwab
United States Magistrate Judge